# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JUAN ANTONIO NAVARRO
SANTIBANEZ; and JESUS MACIAS
KURI,

                                 Plaintiffs,

v.

MICHAEL L. ALEXANDER; UNITED
STATES OF AMERICA;
DEPARTMENT OF HOMELAND
SECURITY; U.S. CUSTOMS AND
BORDER PROTECTION,

                                 Defendants.

Case No.: 18cv1177-MMA (AGS)

**ORDER DENYING PETITION FOR SUBSTITUTION AND REPRESENTATION BY THE UNITED STATES OF AMERICA;**

[Doc. No. 6]

**GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

[Doc. No. 7]

     Plaintiffs Juan Antonio Navarro Santibanez and Jesus Macias Kuri ("Plaintiffs") commenced this action against Defendants Michael L. Alexander ("Alexander"), and Holdings, LLC in the Superior Court of California, County of San Diego. *See* Doc. No. 1-2 at 6.[1] Plaintiffs later amended their complaint to add the United States of America, Department of Homeland Security, and U.S. Customs and Border Protection as defendants. *See id.* at 16. On June 6, 2018, Defendant the United States of America

---

[1] Citations to this document refer to the pagination assigned by the CM/ECF system.

removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1).[2] *See* Doc. No. 1. On June 25, 2018, Plaintiffs filed a First Amended Complaint ("FAC") against Alexander, the United States of America, Department of Homeland Security, and U.S. Customs and Border Protection (collectively, "Defendants") alleging one cause of action under the Federal Tort Claims Act ("FTCA"). *See* Doc. No. 5.

On September 7, 2018, Defendant Alexander filed a Petition for Substitution and Representation by the United States of America, Department of Homeland Security, and U.S. Customs and Border Protection (collectively, "United States") in his place under the FTCA. *See* Doc. No. 6. That same day, the United States filed a motion to dismiss for lack of jurisdiction, or in the alternative, for summary judgment. *See* Doc. No. 7. Alexander filed an opposition to the government's motion. *See* Doc. No. 9. On October 5, 2018, Defendants filed a joint motion to consolidate the hearing date and briefing schedule regarding the two pending motions, which the Court granted. *See* Doc. Nos. 10, 11. On October 15, 2018, the government filed a consolidated brief opposing Alexander's Petition for Substitution and Representation by the United States and replying to its motion to dismiss for lack of jurisdiction, or, in the alternative, for summary judgment. *See* Doc. No. 12.

The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 13. For the reasons set forth below, the Court **DENIES** Alexander's Petition for Substitution and Representation by the United States, **GRANTS** the United States' motion for summary judgment, and **REMANDS** this action back to state court.

///
///

---

[2] Section 1442(a)(1) permits the United States to remove an action commenced in state court to the district court of the United States for the district embracing the place where it is pending where the plaintiff brings suit against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity").

## FACTUAL BACKGROUND

Plaintiffs Juan Antonio Navarro Santibanez and Jesus Macias Kuri are individuals residing in San Diego County, California. FAC ¶¶ 4-5. Alexander is an individual residing in the state of New York. *See id.* ¶ 6; *see also* Doc. No. 6-3 (hereinafter "Alexander Decl.") ¶ 3. Alexander is employed by U.S. Customs and Border Protection ("CBP"), and was employed by CBP at the time of the accident. Alexander Decl. ¶ 2.

From January 12, 2016, through April 8, 2016, Alexander was on special assignment from his permanent position in New York to the San Ysidro/Otay Mesa Port of Entry in San Diego, California. *See id.* ¶ 3. While stationed in San Diego, CBP "paid for and arranged use of a rental car" for Alexander. *Id.* ¶ 4. CBP rented this car "as a pool car." Doc. No. 9-1 (hereinafter "Supp. Alexander Decl.") ¶ 4. Thus, if Alexander was not using the rental car, "other agents staying at the same hotel would use the rental car." *Id.* CBP also paid for Alexander's flight, accommodations, and incidentals while he was in California. *See id.*

"On March 9, 2016, while driving to [his] shift in San Diego," Alexander was involved in a two-vehicle automobile accident in San Diego, California. *Id.* ¶ 5. At the time of the accident, "Plaintiffs were riding a motorcycle and preparing to cross into Mexico at the Otay Mesa international border crossing." FAC ¶ 11. Alexander, driving a rented vehicle, "crossed one or more lanes of traffic without first ensuring that he could make a safe and legal lane change." *Id.* ¶ 12. Plaintiffs allege that due to Alexander's negligent operation of the vehicle, Alexander "struck the side of Plaintiffs' motorcycle, knocking it over while in motion." *Id.* ¶ 13. Plaintiffs sustained physical injuries, and were transported by ambulance to Sharp Chula Vista Hospital where they received emergency medical care. *Id.* ¶ 14. Plaintiffs' motorcycle also sustained "significant damage[.]" *Id.*

Plaintiffs allege, upon information and belief, that Alexander "was acting within the course and scope of said employment when the incident occurred such that CBP is liable for the injuries and damages sustained by Plaintiff[s] as herein alleged." *Id.* ¶ 20.

## PROCEDURAL HISTORY

Pursuant to Department of Justice policy, Alexander "sought representation by the Attorney General under the Westfall Act." Doc. No. 6-2 at 2; *see also* 28 U.S.C. § 2679(b)(1). On June 12, 2018, the Department of Justice issued a letter "which determined [Alexander] was not in the scope of his employment during the time of [the] accident." Doc. No. 6-1 (hereinafter "Holnagel Decl.") ¶ 3; *see also* Doc. No. 7-1 at 3 n.2. After the Department of Justice issued its letter, Plaintiffs amended their complaint to add the United States of America, Department of Homeland Security, U.S. Customs and Border Protection as defendants. *See* Doc. No. 1 at 2. The United States then removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1). *See id.*

## ALEXANDER'S PETITION FOR SUBSTITUTION

Alexander seeks review of the Attorney General's decision refusing to certify that he was acting within the scope of his employment at the time of the accident. *See* Doc. No. 6-2 at 1. Alexander requests the Court grant his petition and substitute the United States in his place in the litigation. *See id.* at 2. The United States, in opposition, asserts Alexander was not acting within course and scope of his employment while commuting to work on March 9, 2016. *See* Doc. No. 12 at 1. Therefore, the United States contends it is not liable for the accident, and the Court "should dismiss the United States from this case, or, in the alternative, grant summary judgment." *Id.*

### A. Legal Standard

"The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). "The immunity extends to both 'negligent' and 'wrongful' 'act[s] or omission[s] of any employee . . . acting within the scope of his office or employment.'" *Saleh v. Bush*, 848 F.3d 880, 888 (9th Cir.

2017) (quoting 28 U.S.C. § 2679(b)(1)).[3]

"When a federal employee is sued for wrongful or negligent conduct, the Act empowers the Attorney General to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'" *Osborn*, 549 U.S. at 229-30 (quoting 28 U.S.C. § 2679(d)(1), (2)). If the Attorney General certifies that a federal employee was acting within the scope of employment at the time the tort occurred, the Westfall Act provides that the United States "shall be substituted as the defendant in a tort suit against the employee." *Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006) (citing 28 U.S.C. § 2679(d)). "Upon certification, the government employee is dismissed from the suit, and is immune from other civil actions arising from the alleged tort." *Id.* at 1036-37 (citing 28 U.S.C. § 2679(b)(1)). "If the Attorney General refuses to certify, the employee may petition the district court to certify that he was acting within the scope of employment." *Id.* at 1037 (citing 28 U.S.C. § 2679(d)(3)).

The Attorney General's decision "is conclusive unless challenged." *Saleh*, 848 F.3d at 889 (quoting *Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993)). "[T]he party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence." *Green*, 8 F.3d at 698.

The Westfall Act does not set forth a test to determine whether someone was "'acting within the scope of his office or employment'; rather, Congress intended that courts would apply 'the principles of *respondeat superior* of the state in which the alleged tort occurred' in analyzing the scope-of-employment issue." *Saleh*, 848 F.3d at

---

[3] The Westfall Act amended the FTCA to provide complete statutory immunity to federal employees from liability for torts arising from acts within the scope of their employment. *See* 28 U.S.C. § 2679(b)(1). "The same analysis was employed before passage of the Westfall Act to determine whether the United States could be liable for an employee's torts under the FTCA." *Saleh*, 848 F.3d at 888.

888 (quoting *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 876 (9th Cir. 1992)). Under the Westfall Act, the exclusive remedy for anyone injured by the negligent or wrongful act of a federal employee acting in the scope of employment is a lawsuit against the United States under the Federal Tort Claims Act. *See* 28 U.S.C. § 2679(b)(1).

## B. Analysis

Alexander argues that he was acting within the scope of his employment at the time of the accident because he was on a special errand for his employer. *See* Doc. No. 6-2 at 6. The government, in opposition, asserts that the special errand exception is inapplicable to this case because Alexander was not running an errand at his employer's request, but rather commuting to work for his regularly scheduled shift. *See* Doc. No. 12 at 2-3.

Under California[4] law, "an employer may be held vicariously liable for torts committed by an employee within the scope of employment." *Mary M. v. City of L.A.*, 814 P.2d 1341, 1343 (Cal. 1991). "[W]here the question is one of vicarious liability, the inquiry should be whether the risk was one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." *Perez v. Van Groningen & Sons, Inc.*, 719 P.2d 676, 678 (Cal. 1986) (internal quotation marks and citation omitted).

The "going and coming rule" provides that an employee is not considered to be acting within the scope of his employment while he is going to or coming from his place of work. *Ducey v. Argo Sales Co.*, 25 Cal. 3d 707, 722 (1979). The rationale underlying this rule is that the employment relationship "is suspended from the time the employee leaves work until he or she returns, since the employee is not ordinarily rendering services to the employer while traveling." *Jeewarat v. Warner Bros. Entm't Inc.*, 98 Cal. Rptr. 3d 837, 844 (Ct. App. 2009) (internal quotation marks and citation omitted).

---

[4] The parties agree California law applies, as the accident occurred in California.

Pursuant to the special errand exception, however, an employer can be held liable "where a negligent act was committed while the employee was engaged in a special errand for the employer." *Ducey*, 25 Cal. 3d at 722. As one court has explained,

> [i]f the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons.

*Felix v. Asai*, 192 Cal. App. 3d 926, 931 (Ct. App. 1987). Examples of the special errand exception include situations where: (1) an employee goes on a business errand for his employer leaving from his workplace and returning to his workplace; (2) an employee is called to perform a special task for the employer at an irregular time; and (3) the employer asks an employee to perform a special errand after the employee leaves works but before going home. *See id.* at 931-32. In such situations, the employee is generally acting within the scope of his employment. *See id.* at 932.

"Generally, the issue of scope of employment is a question of fact. However, the issue becomes a question of law when the facts are undisputed and no conflicting inferences are possible." *Perez*, 719 P.2d at 679 (internal citation omitted).

In support of his Petition for Substitution, Alexander largely relies on *Jeewarat,* where an employee attended a three-day business conference. 98 Cal. Rptr. 3d at 840. The employer paid for the employee's airfare, hotel, and airport parking. *See id.* at 841. When the employee returned from his trip and arrived at the airport, he retrieved his car from the parking lot. *See id.* The employee did not intend to go to his office, but planned to return to his home. *See id.* On the drive to his home, the employee was involved in a car accident that injured several pedestrians. *See id.* The California Court of Appeal reversed the trial court order granting summary judgment in favor of the employer

pursuant to the going and coming rule, holding that "a special errand may include commercial travel such as the business trip in this case." *Id.* at 845.

The government relies on *Clamor v. United States*, where the employee, a civilian engineer working for the United States Navy in Washington, D.C., received a temporary assignment for a few weeks to work on the USS Los Angeles, which was moored at the Pearl Harbor Naval Base in Hawaii. 240 F.3d 1215, 1216 (9th Cir. 2001). The Navy reimbursed the employee for his rental car and hotel while working in Hawaii. *See id.* On his way to his hotel after work one day, the employee rear-ended a car, injuring the other driver. *See id.* Applying Hawaii law, the Ninth Circuit reversed the district court's order finding that the employee was acting in the scope of his employment at the time of the accident. *See id.* at 1217. The Ninth Circuit explained that the employee "was not working the entire time he was in Hawaii, and was, in fact, off duty when the accident occurred." *Id.* The employee "was not engaged in any errand for his employer, but was leaving work and free to do whatever he wished." *Id.* Moreover, the Ninth Circuit indicated that the fact that the Navy reimbursed the cost of the employee's rental car "is more indicative of the inconvenience of working on an island in the middle of the Pacific Ocean . . . than an indication that the employer considered all actions taken while driving that car to be within the scope of employment." *Id.*

Two additional California Court of Appeal cases, cited by the United States, shed light on the case at bar. For example, in *Sunderland v. Lockheed Martin Aeronautical Systems Support Company*, 29 Cal. Rptr. 3d 665, 667 (Ct. App. 2005), an employee injured the plaintiff in a rear-end collision at a fast food restaurant. The plaintiff argued that because the employee who hit her car was in California pursuant to his employer's temporary work assignment for several months, and because the corporation paid for the employee's travel costs, the corporation should be held vicariously liable for its employee's alleged tort. *See id.* at 668. The court held that the employer was not vicariously liable for the accident, and explained that "[t]he payment of a travel allowance, however, 'does not reflect a sufficient benefit to defendant [employer] so that

it should bear responsibility for [a] plaintiff's injuries.'" *Id.* at 672-73 (quoting *Caldwell v. A.R.B., Inc.*, 222 Cal. Rptr. 494, 503-04 (Ct. App. 1986)). Moreover, the employee "performed no services for [the corporation] after leaving the workplace about mid-day, and drove to the fast-food restaurant for his own benefit." *Id.* at 673.[5]

Additionally, in *Pierson v. Helmerich & Payne International Drilling Company*, 209 Cal. Rptr. 3d 222, 225-28 (Ct. App. 2016), the court considered whether the special errand exception applied when an employee was involved in a traffic accident while driving two co-workers to a hotel (paid for by the employer) after their shift ended. The court rejected application of the special errand exception, noting that the employees were acting on their "own behalf" at the time of the accident; thus, the employer could not be held liable. *Id.* at 242.

Here, Alexander asserts that he was on a special errand for his employer "from the time he started to travel to San Diego in January 2016 until he returned to New York in April 2016, or until he deviated therefrom for personal reasons." Doc. No. 6-2 at 6. As the government points out, Alexander does not cite to, nor is the Court aware of, any case law supporting application of the special errand exception in the context of a temporary assignment spanning a period of several months. Unlike the employee in *Jeewarat*, who attended a business conference for three days, Alexander was temporarily stationed in San Diego on a special assignment for *three months*. As such, *Jeewarat* is inapposite to the case at bar.

Additionally, the fact that the United States paid for and arranged Alexander's rental car does not except this case from the traditional going and coming rule. *See Caldwell*, 222 Cal. Rptr. at 502 ("While in certain circumstances payment of travel expenses may be an exception under workers' compensation laws . . . , the same

---

[5] The court did not discuss the special errand exception to the going and coming rule in reaching its conclusion. However, the court did note that the employee was engaged in a purely personal activity at the time of the accident; thus, it is clear that the employer could not be held liable under the special errand exception. *See id.*

conclusion has not been reached under the respondeat superior doctrine.") (internal citation omitted). The Court finds the Ninth Circuit's reasoning in *Clamor* on this issue persuasive.[6] The government's payment and arrangement of a rental car for Alexander's use during his time in San Diego is more indicative of the inconvenience of working across the county for a period of three months "than an indication that the employer considered all actions taken while driving that car to be within the scope of employment." *Clamor*, 240 F.3d at 1217; *see also Sunderland*, 29 Cal. Rptr. 3d at 672-73.

Moreover, the Ninth Circuit in *Clamor* expressly considered whether the employee was on an errand for the Navy at the time of the accident, and concluded that he was not. *See Clamor*, 240 F.3d at 1217 ("[The employee] was not engaged in any errand for his employer, but was leaving work and free to do whatever he wished."). Similarly here, aside from summarily claiming he was on a special errand for the *entirety* of his three-month assignment in San Diego, Alexander does not claim that on the day of the accident, he was on a specific errand for his employer. In fact, it is undisputed that the accident occurred while Alexander was "driving to" his scheduled shift. Alexander Decl. ¶ 5.

Alexander was not engaged in any CPB business at the time of the accident, but was commuting to work. *See id.*; *see also* Doc. No. 7-2 (hereinafter "Aki Decl.") ¶ 10. Alexander argues that he was not commuting to "his *normal* place of work (exempt under the coming and going rule), [but] was traveling to his temporary workplace across the country at the special request of his employer." Doc. No. 6-2 at 6 (emphasis in original). However, the Otay Mesa Port of Entry was Alexander's normal place of work at the time of the accident. *See* Aki Decl. ¶¶ 4, 10. Further, Alexander does not cite to any authority in support of his argument that a temporary workplace for an extended period of time is

---

[6] The Court is mindful that the Ninth Circuit in *Clamor* applied Hawaii law in concluding that the employee was not acting within the scope of his employment at the time of the accident. However, the facts of *Clamor* are sufficiently analogous to the case at bar to guide the Court's analysis.

analyzed differently than a normal workplace for purposes of the going and coming rule.

Accordingly, the Court finds that Alexander has not met his burden of "disproving" the Attorney General's decision to deny scope of employment certification "by a preponderance of the evidence." *Green*, 8 F.3d at 698. Therefore, the Court **DENIES** Alexander's Petition for Substitution and Representation by the United States.

### C. Evidentiary Hearing

Alexander claims that "triable issues of material fact [exist] as to whether [his] business trip was a special assignment as in *Jeerwarat*." Doc. No. 9 at 7. Specifically, Alexander disputes: (1) that the rental car was for personal use; (2) that Alexander and all CBP Officers were not required to wear uniforms while commuting to and from the worksite; and (3) that Alexander was not required to intervene to prevent crime outside of his duty station and work shift. *See id.* at 8.

The Ninth Circuit has explained that "when a district court is reviewing a certification question under the Westfall Act, it must identify and resolve disputed issues of fact necessary to its decision before entering its order." *Arthur v. United States*, 45 F.3d 292, 296 (9th Cir. 1995). In doing so, a district court "should hold such hearings as appropriate (including an evidentiary hearing if necessary), and make the findings necessary to bind the parties by its decision and enable them to appeal the certification decision if they deem an appeal necessary." *Id.*

Here, Alexander fails to explain how any of these disputed facts are "necessary" to the Court's scope of employment determination. *Id.* Alexander does not cite to any authority supporting application of the special errand exception where an employer pays for an employee's rental car in the context of a temporary assignment. Nor does Alexander cite to any case law, or provide any argument, in support of the proposition that an officer commuting to work in uniform is somehow on a special errand for his employer. Finally, Alexander fails to cite authority supporting the proposition that even if an off-duty officer is required to intervene to prevent crime outside of his duty station, he is somehow on a special errand for his employer when commuting to work in uniform.

Accordingly, the Court finds that there are no triable issues of fact necessary to the Court's scope of employment determination. Moreover, to the extent the parties request an evidentiary hearing, the Court, in its discretion, **DENIES** such a request as an evidentiary hearing is not appropriate or necessary to the Court's *de novo* determination of scope of employment under the applicable legal standard. *See Saleh*, 848 F.3d at 892 (noting that the district court did not abuse its discretion in denying an evidentiary hearing to challenge the scope certification because the allegations, taken as true, "do not establish that Defendants acted outside the scope of their employment"); *Mansfield v. Pfaff*, 719 F. App'x 583, 585 (9th Cir. 2017) ("The district court correctly understood than an evidentiary hearing to review the Attorney General's Westfall Act certification is discretionary.").

### UNITED STATES' MOTION FOR SUMMARY JUDGMENT[7]

The United States contends that under the applicable state law, an employer is not liable for torts committed by its employees while commuting to and from work. *See* Doc. No. 7-1 at 1-2. Thus, the United States requests the Court "dismiss the United States from this case for lack of subject matter jurisdiction, or, in the alternative, grant summary judgment." *Id.* at 2. In opposition, Alexander asserts that he was acting within the scope of his employment at the time of the accident, reiterating the same arguments made in his Petition for Substitution. *See* Doc. No. 9 at 2. Alexander argues that genuine issues of material fact exist and thus "requir[e] this Court [to] deny the United States' Motion to Dismiss, or, in the alternative, for Summary Judgment." *Id.*

**A. Legal Standard**

"A party may move for summary judgment, identifying each claim or defense—or

---

[7] Because the Court considers evidentiary materials that go "beyond the face of the pleadings" in ruling on Alexander's Petition for Substitution, and such materials are relevant to the Court's ruling on the government's motion, "the Court finds the government's motion appropriate for decision on summary judgment." *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 891 (C.D. Cal. 2000).

the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

**B. Analysis**

The Westfall Act provides that if a federal employee is sued for a covered tort for actions taken within the scope of his or her employment, the United States will be substituted as the defendant, the case will proceed under the FTCA, and the individual will be dismissed from the action. *See* 28 U.S.C. § 2679. For the reasons set forth above, the Court finds that Alexander was not acting within the scope of his employment at the time of the accident. Moreover, the Court finds that there is no genuine issue of *material* fact with respect to the Court's scope of employment determination. *See* Fed. R. Civ. P. 56(a). Thus, the United States cannot be sued for the alleged tortious acts of an employee who was not acting within the scope of his employment under the FTCA.

Accordingly, Plaintiff's FTCA claim against the United States fails, and the Court

**GRANTS** the United States' motion for summary judgment. *See Vallier*, 120 F. Supp. 2d at 910 (noting that because the court finds that the employee was not acting within the scope of his employment, "[t]he United States is thus entitled to summary judgment of those claims.").

### SUBJECT MATTER JURISDICTION

Alexander is the sole remaining defendant in this action. Thus, it is within the Court's discretion to remand the action. *See Watkins v. Grover*, 508 F.2d 920, 921 (9th Cir. 1974) (noting that where an action is removed pursuant to 28 U.S.C. § 1442, and the federal defendants are later dismissed, "the district court should decide whether to hear the suit on its merits or, in its discretion, to remand the suit to the state court from which it was removed.").

Given the early stage of the litigation, and because Plaintiffs' tort claim against Alexander arises under California law, the Court, in its discretion, declines to hear the suit on the merits and **REMANDS** this action to state court.[8] *See Murphy v. Kodz*, 351 F.2d 163, 167-68 (9th Cir. 1965) ("Where the federal head of jurisdiction has vanished from the case, and there has been no substantial commitment of judicial resources to the nonfederal claims it is, . . . akin to 'making the tail wag the dog' for the District Court to retain jurisdiction.") (quoting *Moynahan v. Pari-Mutuel Emps. Guild of Cal. Local 280*, 317 F.2d 209, 212 (9th Cir. 1963)); *Vallier*, 120 F. Supp. 2d at 916 (remanding the plaintiffs' state law claims after denying the petition for substitution and granting the United States' motion for summary judgment in FTCA case); *Mellis v. Asbestos Corp. Ltd.*, No. 13-CV-3449 SBA, 2013 WL 4805746, at *2 (N.D. Cal. Sept. 9, 2013)

---

[8] The mandatory remand provision set forth in 28 U.S.C. § 2679(d)(3) is inapplicable because Alexander originally filed the instant Petition for Substitution in this Court—and not state court. *See* 28 U.S.C. § 2679(d)(3) (providing that where the Attorney General concludes that the standards for substitution have not been met, and "the petition [for substitution] is filed in a civil action or proceeding *pending in a State court*," the action may be removed to the district court. If, in considering the petition, the district court determines that the employee was not acting within the scope of employment, "the action or proceeding shall be remanded to the State court.") (emphasis added).

(remanding action where case was removed pursuant to § 1442(a)(1), but the plaintiff later dismissed the removing defendant from the action).

## CONCLUSION

Based on the foregoing, the Court **DENIES** Alexander's Petition for Substitution and Representation by the United States, and **GRANTS** the United States' motion for summary judgment. <u>The Clerk of Court is instructed to terminate this action as to Defendants the United States, Department of Homeland Security, and U.S. Customs and Border Protection.</u>  Further, the Court, in its discretion, declines to retain jurisdiction and **REMANDS** this action back to state court. *See Watkins*, 508 F.2d at 921.

**IT IS SO ORDERED.**

Dated: November 2, 2018

HON. MICHAEL M. ANELLO
United States District Judge